## Richmond.

STEARNS v. HARMAN.

JANUARY 8th, 1885.

1. EQUITY, JURISDICTION, AND RELIEF—*Quia timet*—*Cloud on title.*—On the principle of *quia timet*, a court of equity will entertain a suit by the owner *in possession* of land, to remove a cloud from his title, by annulling a deed that, by mistake or fraud, conveys the land to another, who makes adverse claim thereto, but brings no suit. *Carroll* v. *Brown*, 28 Gratt. 791.

2. EJECTMENT—*Adverse claimant.*—But under Code 1873, chapter 131, sections 4 and 5, the proper remedy is by an action of ejectment, where the owner holds the legal title, but has not actual possession, and another asserts an adverse claim to the land, but has not actual possession of it. In such case equity has no jurisdiction. *Harvey* v. *Tyler*, 2 Wallace (U. S.), 328.

Argued at Wytheville, but decided at Richmond.

Appeal from decrees of circuit court of Bland county, entered November 4th, 1883, and May 5th, 1884, respectively, in the chancery cause therein pending, wherein Franklin Stearns was complainant and A. Q. Harman was defendant.

The object of the suit was to annul a grant dated May 1st, 1880, from the Commonwealth to Harman for 371 acres of land, to which the latter asserted claim, but of which he had not actual possession, on the ground that the said 371 acres were embraced within a tract of 75,000 acres, which had, in 1795, been granted to Robert Morris, and had passed, by devise and deed, to the complainant, who, however, was not in actual possession thereof; and on the ground that the said junior grant *cast a*

*cloud* on the complainant's title, which cloud he had a right, having no remedy at law, to come into equity to get removed.

The defendant demurred to the bill, and the court sustained the demurrer.

The complainant filed an amended bill, whereby he alleged, in addition to what was alleged in the original, that the defendant had for years known that the said 371 acres were embraced in the older grant, and had obtained the junior grant thereto fraudulently as to the complainant.

To the amended bill the defendant's demurrer was also sustained, and the complainant obtained an appeal to this court.

Opinion states the facts.

*Kent & Williams Brothers*, for the appellant.

*Harman & Munsey*, for the appellee.

RICHARDSON, J., delivered the opinion of the court.

In July, 1883, Franklin Stearns exhibited his bill against A. Q. Harman in the circuit court of Bland county, setting forth that said plaintiff, Stearns, is the owner in fee of what is commonly known as the "Phineas Thurston big survey lands," lying in the counties of Wythe, Bland, Giles and Pulaski, and part of a survey of 75,000 acres granted to Robert Morris, of the city of Philadelphia, assignee of Robert Pollard, which grant bears date 19th March, 1795.

To show the derivation of his title, the plaintiff exhibits with and as part of his bill—

1. A grant from the Commonwealth of Virginia to Robert Morris, for 75,000 acres, dated 19th March, 1795.

2. The will of Robert Morris, devising said land to his widow, Mary Morris, which was admitted to probate, in the county court of Wythe, on the 13th day of May, 1851, by authenticated copy.

3. An authenticated copy of the will of Mary Morris, duly probated in the county court of Wythe, devising said land to her daughter, Maria Nixon.

4. Deed from said Maria Nixon, conveying said land to said Phineas Thurston, dated the 1st day of January, 1851.

And the plaintiff avers that he acquired complete title to said land, as thus transmitted to said Thurston, through the medium of a chancery suit brought and prosecuted in the circuit court of Wythe county, in which he was plaintiff and the said Phineas Thurston and others were defendants, which suit was brought to enforce the lien of a judgment held by him against said Thurston; that the land was regularly sold, under decrees pronounced in that suit; was purchased by said Stearns, and the same conveyed to him by commissioners appointed by the said court for the purpose; and the plaintiff exhibits with his bill a certified copy of the decrees and other proceedings in said chancery cause, together with a copy of the deed from said commissioners to him.

The bill alleges that while Thurston was the owner of the land he, by himself and by his agents and attorneys in fact, sold and conveyed considerable portions (there is no intimation of how much or where located) of said land; but that a large portion thereof remained unsold by said Thurston, which remainder was purchased by said Stearns, under decrees in the said chancery suit. And the bill also alleges that a portion of the land so purchased by Stearns lies on the north side of "Walker's Big Mountain," in Bland county, adjoining the lands "claimed or owned" by A. Q. Harman; that this land is in a state of nature—is wild, unimproved, uncultivated, and uninclosed; and that the legal seizin therein and thereto passed, under the grant aforesaid, to Robert Morris, and has, as before described, been regularly transmitted to and vested in said plaintiff, Stearns.

The bill then alleges: "That the said A. Q. Harman, on the 14th day of January, 1877, made a pretended entry of said

wild lands adjoining his lands, and a pretended renewal or enlargement of said pretended entry on the 9th of June, 1879, and on May 1st, 1880, had surveyed 371 acres of said wild land, and obtained from the Commonwealth a grant therefor;" a copy of which grant the plaintiff exhibits with his bill. And the plaintiff in his bill insists that the complete legal title and seizin to said land having passed to and vested in the said Robert Morris, by the said grant to him, and the same having been regularly transmitted to said plaintiff, Stearns, said Harman took nothing by the grant to him for said 371 acres, part of the 75,000 acres granted to Robert Morris, and included in the part thereof purchased by said Stearns, as before stated. But the plaintiff alleges that said Harman asserts claim to the 371 acres granted to him, and though the same is a wrongful and illegal claim, it constitutes "color of title," and that the holding of same by actual possession by said Harman, for the period constituting the statutory bar, would ripen Harman's claim into a good title. The plaintiff also alleges that, by virtue of his older and superior title, *he is in the legal possession* of same; but says "Harman can press his claim by taking actual possession of said 371 acres granted to him, and thereby greatly and continuously annoy and harrass your orator, unless said pretended grant or patent be cancelled and annulled." And the said plaintiff says he is without relief at law; insists that he is entitled to come into equity for relief; and prays that the grant to said Harman for said 371 acres be set aside and annulled, and the cloud thereby cast upon the plaintiff's title removed, and for general relief.

The defendant, Harman, demurred and answered.

In his answer the defendant, among other things, denies the validity of the alleged Thurston title, and denies that the survey of 75,000 acres granted to Robert Morris ever has been or can be established; but says if the same were or could be established, that the same does not embrace the 371 acres granted to him as aforesaid. But it is unnecessary to look to the an-

swer, as the cause went off in the court below on the demurrer.

The cause was first heard on the demurrer at the November term, 1883, of said circuit court, when the court sustained the demurrer; but on motion of the plaintiff, leave was given him to amend his bill, and the cause was remanded to rules for that purpose.

The plaintiff amended his bill, reäffirming the statements contained in his original bill, and charging in addition that the defendant Harman, at the time he made his said entry and survey and obtained his said grant for the 371 acres, knew and had for years known that the land so entered, surveyed, and granted to him was embraced in and constituted a part of the land known as the Phineas Thurston land, and that said Thurston or those claiming under him owned the same; that said Harman, in making his said entry and obtaining his said grant, with the knowledge aforesaid, committed a fraud upon said Thurston and those claiming under him; and that said Harman, with said knowledge of the facts, fraudulently, and for the improper and fraudulent purpose of seeking an improper advantage, and with intent to defraud, failed to give the notice required by the statutes of his intention to make said entry, for six months previous thereto to said Thurston; and for the reasons set forth the plaintiff avers and charges that the said patent to said Harman was obtained by fraud, and that the same is fraudulent both as to said Thurston and said Stearns, who has succeeded to and holds the title of said Thurston. And then in the amended bill the plaintiff further avers that, should it turn out in the progress of the cause that said Harman's position in relation to said land is an innocent one, and that he in fact did not know of the existence of the right and title of said Thurston to said land at the time he obtained said patent, the said Thurston being then and the said Stearns since that time the complete owner with the legal seizin thereof, and having paid all taxes thereon, both before and since the emanation of Harman's grant, that then, the said Harman having proceeded

by mistake and misapprehension of the rights of said Thurston and said Stearns, the said patent is void as against said Thurston and the said plaintiff, Stearns.

Such is the plaintiff's claim, stated as near as may be, in the language of the bill.

The defendant, Harman, demurred to and answered the amended bill. In his answer he reiterates the matters contained in his answer to the original bill, and denies the fraud charged in the amended bill; denies all knowledge of the alleged rights of said Thurston and Stearns, or that they have any such rights; denies any mistake, and denies that he was required by any statute to give said Thurston and Stearns or either of them six months' notice, or any notice.

The cause came on again at the May term, 1884, of said circuit court, on the amended bill and exhibits filed therewith, and the demurrer to said amended bill and joinder therein; on consideration whereof the court entered a decree sustaining the demurrer and dismissing the plaintiff's bill; from which decree as well as from the former decree sustaining the demurrer to the original bill the case is here on appeal.

The sole question to be determined is one of jurisdiction. Has a court of equity jurisdiction to hear and determine the case made by the bill? In other words, had the plaintiff a complete and ample remedy at law? If the latter, then there is no error in the decrees complained of.

The demurrer, it is true, necessarily admits as true the facts stated in the bill, so far as they are relevant and well pleaded, but denies the sufficiency of the facts thus set forth to entitle the plaintiff to the relief sought. Whether the facts stated in the bill, so admitted by the demurrer to be true, entitle the appellant to the relief prayed for is, therefore, the only question to be here determined.

A very full statement of the appellant's case, as made by his original and amended bill, has already been set forth. It is impossible to scan the case thus made without at once discover-

ing that the parties, neither of whom is in the actual posses-
sion, stand to each other in the simple relation of adverse
claimants of the 371 acres of land in controversy. The appel-
lant's contention is that this land is part of the 75,000 acres
granted to Robert Morris, of Philadelphia, in 1795; that by
the several devises and conveyances before referred to the legal
titles to same have been regularly transmitted to and vested in
him, and that he has the older and better title, coupled with the
complete legal seizin, by reason whereof nothing passed by the
Commonwealth's junior grant to the appellee, Harman. But,
he says, Harman's patent, however wrongfully and illegally ob-
tained, constitutes "*color of title*," that Harman is asserting
claim to the land thereunder, and that if he should take actual
possession, and hold for the period constituting the statutory
bar, his title would thereby ripen into a good title. He says
that thus a cloud is cast upon his title, that he is absolutely
without remedy at law, and is entitled to come into equity to
have the cloud upon his title removed.

Now, was the plaintiff below, the appellant here, without
remedy at law? We think he was not. On the contrary, the
question involved was purely one of title, and for the settle-
ment of which the action of ejectment is a peculiarly appro-
priate remedy.

By section 4 of chapter 131, Code 1873, it is provided that
no person shall bring such action (ejectment) unless he has,
at the time of commencing it, a subsisting interest in the pre-
mises claimed, and a right to recover the same, or to recover the
possession thereof, or of some share, interest or portion thereof.

Under this statutory provision, taking the appellant's case as
stated in the bill, there can be no pretext for saying he had not,
at the time of the commencement of this suit, a subsisting in-
terest in the premises in controversy, for he asserts in his bill
that he has a claim, backed by a complete legal title, and that
the legal seizin or constructive possession is in him undisturbed
by any actual adverse possession. This being so, upon proof of

the case made by the bill, he unquestionably had the right at law, by this action, to maintain and set up his title to the interest claimed by him, to the exclusion of the adverse claim asserted by Harman, the junior claimant.

But the appellant insists that, as he has only the legal seizin unaccompanied by the actual possession, he has no right to maintain the action of ejectment as against one asserting an adverse claim, but not in the actual possession. This, however, is a clear misapprehension of his rights under the law, and is completely answered by the fifth section of the chapter (131) above referred to, by which it is provided, it is true, that the person actually occupying the premises shall be named defendant in the declaration; but goes further, and provides that if the premises be not occupied, the action must be against some person exercising acts of ownership thereon, or *claiming title thereto*, or some interest therein, at the commencement of the suit.

Looking again to the case stated in the bill, we find that there is a person *asserting claim of title* to the premises in controversy, and that person is Harman, the defendant below and appellee here. This being so, it is matter of surprise how the appellant could ever, with these plain provisions of the statute before him, have concluded that he was without remedy at law; and such, the legal remedy, being plainly not only given by statute, but exactly adapted to the particular case, it is equally plain and clear that a court of equity had no jurisdiction to entertain the case. In fact, if it were otherwise the great purpose for which the action of ejectment has been given—that, among others, of settling disputed questions of title and boundary— would be defeated, and the action rendered far less efficacious than it was intended to be, especially in Virginia. But, plain as the legislative intent appears in the unambiguous terms of the statute itself, we are not under the necessity of giving for the first time authoritative judicial construction thereto. This statute has passed under the scrutiny of the highest judicial

tribunal of the land, and the view above expressed has been fully sustained thereby.

In *Harvey* v. *Tyler*, 2 Wall. U. S. R. 328, Mr. Justice Miller, delivering the opinion of the court, said: "The Code of Virginia, as well as that of several other States, allows the action of ejectment to be brought against persons claiming title or interests in the property, although not in possession. It says: 'The person actually occupying the premises shall be named defendant in the declaration. If they be not occupied, the action must be against some person exercising ownership thereon, or claiming title thereto, or some interest therein, at the commencement of the suit.'"

And the learned justice proceeds: "If, then, there was a part of the tract claimed by some person, on which there was no occupant, the case existed which the second clause of the section provides for. The policy of this act is obvious. It is that persons out of possession, who set up false claims to land, may, by a suit in ejectment, which is the legal and proper mode of trying title, be brought to this test. The act provides that such a judgment is conclusive against all the parties; and thus the purpose of the law, to quiet title by a verdict and judgment in such cases, is rendered effectual. The language of the Code of New York is identical with that of Virginia on this subject. And the construction we have given to it was held to be the true one by the supreme court of the former State." See *Bowyer* v. *Empie*, 5 Hill, 48.

Cases may and do arise in which the jurisdiction of equity readily attaches to remove a cloud from the title of the true owner of land. If the wrongful claim is founded in either fraud or mistake, and the rightful owner is so situated that he cannot bring ejectment, a court of equity will, upon a proper case made, take jurisdiction and extend relief, by causing the delivery up, cancellation, or rescission of agreements, securities, deeds, or other instruments. On this subject Judge Story says: "It is obvious that the jurisdiction exercised in cases of

this sort is founded upon the administration of a protective or preventive justice. The party is relieved upon the principle, as it is technically called, *quia timet*—that is, for fear that such agreements, securities, deeds, or other instruments may be vexatiously or injuriously used against him, when the evidence to impeach them may be lost, or that they may now throw a cloud or suspicion over his title or interest." 1 Story's Eq. § 694.

Upon this principle was decided the case of *Carroll* v. *Brown*, 28 Gratt. 971. But there is a wide dissimilarity between that case and the case at bar. There the owner was in possession, and filed his bill to set aside a deed which had been put upon record, whereby the complainant's land had been wrongfully conveyed to a purchaser at a tax-sale. Certainly a court of equity had jurisdiction in that case, because the owner was *in possession*, and could not bring ejectment against the adverse claimant, not in possession, to try the question of title; and the adverse claimant standing off, and content not to bring his action then against the owner, as he might have done (see section 5, chapter 131, Code 1873), thus showing that he was holding back for some sinister purpose, the tendency of which was to seriously impair if not to destroy the market value of the owner's title. In the case at bar, whatever may have been the motives of the parties or either of them, and whether their acts are founded in fraud or mistake, the remedy, as we have shown, is complete at law. That remedy, by the appellant's own showing, is by an action of ejectment—by which the question of title, between the parties, can be effectually put at rest.

In any view of the case it is clear that the plaintiff below, the appellant here, mistook his remedy, and sought the wrong forum. There is no error in the decrees appealed from or either of them, and the same must be affirmed, with costs to the appellee.

DECREE AFFIRMED.