## CHARLESTON.

### CLAYTON *v.* BARR.

*(HOLT, JUDGE, absent.)

Submitted June 11, 1890.—Decided December 3, 1890.

TITLE—EQUITY—JURISDICTION.

Where the estate or title between conflicting claimants to land is legal in nature, and legal remedy is adequate, and one party has already recovered in ejectment upon his claim, that party can not sue in equity to remove the cloud from his title arising from such adverse claim, the party suing being out of possession, and the adverse claimant in possession.

*A. F. Haymond* for appellants, cited:

56 Ill. 25; 31 Md. 118; 24 Ark. 431; 13 Mich. 367, 370; 30 Ark. 579; 28 Conn. 582; 37 Mich. 363; 37 Ark. 643; 73 Mo.

---

*Case submitted before Judge Holt's appointment.

289; 3 Pom. Eq. Juris. § 1399 n. 4; 1 Marsh. 180; 4 Man. & Sel. 94; Freem. Judgt. § 70, 71; 4 Yeat. (Pa.) 185, 205; 1 Dall. 197; 1 Serg. & R. 120; 9 Serg. & R. 284; 8 Coke 162 A; 3 Binn. 102; 1 Bouv. L. Dict. (16th Ed.) 280; 12 Am. Dec. 350; 12 Bush 101; 47 Tex. 222; 3 A. K. Marsh. 268; 10 Me. 278; 37 Am. Dec. 689; 5 Am. Dec. 636; 7 Am. Dec. 355; 6 W. Va. 369; 12 W. Va. 331; 20 Gratt. 31; 22 Gratt. 649; Warth's Code. c. 114, ss. 4, 29; 24 W. Va. 173; 19 W. Va. 223; 23 W. Va. 675; 18 W. Va. 612, 628; 9 N. H. 304; Wood Lim. Act., 96, 107; Warth's Code, c. 125, ss. 35, 36, 57; 22 W. Va. 404, 417, 418; 31 W. Va. 701, 706; 24 W. Va. 586; 26 W. Va. 603; 6 W. Va. 316.

*Peck & Ayres* for appellee, cited:

26 W. Va. 839; 12 W. Va. 336; 13 W. Va. 231; 10 W. Va. 489; 2 Call 376; 5 Call 115; 3 Munf. 227; 6 Munf. 580; 37 Am. Dec. 689; 95 N. C. 340; Id. 674; 85 N. C. 34; 21 Ill. App. 113; 17 Ill. App. 30; 74 Me. 489; 33 Ark. 218; 65 Ala. 1; 67 Ala. 333; 83 Ind. 135; 59 Cal. 264; 82 Ga. 103; 61 Mo. 196; Id. 579; 29 W. Va. 794; 18 W. Va. 103; 13 W. Va. 327; 15 W. Va. 323; 6 Leigh 399; 9 Leigh 262; 20 Gratt. 31; 22 Gratt. 649; 13 W. Va. 231; Code, c. 31, s. 25; 26 W. Va. 129; 29 W. Va. 256; 20 W. Va. 480; 9 W. Va. 689; 3 Bart. Ch'y Pr. 1090, 1091, 1093; 19 W. Va. 79; 11 S. E. Rep. 228; 16 W. Va. 345; 29 W. Va. 794; 3 W. Va. 158; 18 Gratt. 13; 21 Ala. 38; 20 Ark. 109; 28 Cal. 406; 9 W. Va. 492; 10 W. Va. 131; 9 Wheat. 616; 29 Gratt. 351; Dan. Ch'y Pr. 81; 9 Gratt. 336, 358; 2 Gratt. 198; 13 Gratt. 195; 28 Gratt. 698; 10 W. Va. 130; 23 W. Va. 708; 22 W. Va. 420; 4 W. Va. 600; 14 W. Va. 22; 6 Munf. 184.

BRANNON, JUDGE:

John S. Clayton filed his bill in chancery in the Circuit Court of Ritchie county against Sarah E. Barr and others, alleging, in substance, that Mary E. Ripley owned a tract of eighty three and a half acres of land in Ritchie county, and was assessed with taxes thereon for the year 1876; that on March 17, 1876, by deed she conveyed it to R. S. Taggart, retaining a lien for purchase-money; that on July 27, 1877, Taggart by deed conveyed the land to A. H. McGin-

nis, retaining a lien to secure four hundred and seventy eight dollars of the purchase-money to Ripley, and three hundred and eighty six dollars to him, Taggart; that the land was returned delinquent, and on October 13, 1889, sold for non-payment of said taxes and purchased by the plaintiff, Clayton; and that on the 30th of May, 1881, he obtained and had recorded a deed under said tax-sale; that in September, 1881, he, Clayton instituted an action of ejectment against McGinnis, then in possession, for recovery of the land, pending which, in April, 1882, Mary Ripley brought a chancery suit against McGinnis and Taggart to sell the land for purchase-money so due her from them, but she died soon, and her suit was revived in the name of Washington Smith as her administrator; that on July 1, 1882, judgment was entered on a verdict of a jury, found 27th June, 1882, in said ejectment in favor of plaintiff, Clayton, against McGinnis, for the recovery of said land; that having so recovered and taken possession of the land he by deed of October 28, 1882, conveyed it to S. O. Fordyce; that on January 7, 1884, Sarah E. Barr and others, heirs of Mary Ripley, filed their bill against Fordyce and Clayton to vacate the said tax-deed to Clayton and the deed from Clayton to Fordyce, pending which on October 23, 1884, George Loomis, as special commissioner, sold the land under a decree rendered June 22, 1883, in said suit of Smith, administrator of Ripley, against McGinnis and Taggart for said purchase-money, and Thomas E. Davis became its purchaser, and on October 28, 1884, said sale was by decree confirmed; that on June 18, 1885, a decree was entered in the suit of Barr and others against Clayton and Fordyce, adjudging their deeds null and void; that from that decree Clayton took an appeal to the Supreme Court of Appeals, pending which appeal, on September 1, 1885, Davis, by deed, conveyed his interest in the land to Hiram Williams; that on November 2, (should be 25) 1886, (29 W. Va. 256,) the Court of Appeals, by a clerical error, affirmed said decree annulling said tax-deed to Clayton, and Clayton's deed to Fordyce; that on February 24, 1888, Loomis, as commissioner, made a deed to Davis for the land; that on June 30, 1888, the Court of Appeals, by decree then entered on

application of Clayton, adjudged and decreed *nunc pro tunc* that its former decree of November 25, 1886, be set aside, and the said decree of the Circuit Court of Ritchie of June 18, 1885, making void the said tax-deed to Clayton, and Clayton's deed to Fordyce, be reversed and annulled, and the bill in said suit brought to annul said deeds be dismissed ; that on January 2, 1889, Fordyce conveyed the land back to Clayton.

The bill went on to allege that by such tax-sale and deed Clayton became vested with the fee-simple to said land, and all the right, title and interest therein that Ripley, her vendees Taggart and McGinnis, or any other person had ; that Ripley had not, in the year 1882, when she brought her said suit against Taggart and McGinnis to collect the purchase-money due on said land, nor had either Taggart or McGinnis, any title to it, or interest in it, at any time after May 31, 1881, when he (Clayton) had his tax-deed recorded, nor at any time during the pendency of her suit, nor at the time the land was sold under said decree; that no right or title passed to Davis by the sale or deed to him from Loomis, commissioner, nor to Williams by the deed from Davis to him; that, neither Clayton nor Fordyce being parties to said suit under which the land was sold, they were not bound by the decree of sale, or any proceedings therein ; but that, nevertheless, said deed from Davis to Williams, and said deed from Loomis, commissioner, to Davis, constituted a cloud upon said Clayton's title, and by reason of said deeds he was greatly hindered, delayed, and damaged in the sale, occupancy, and improvement of the land.

The bill then alleged that by virtue of Clayton's tax-deed for said land, and his recovery of it in ejectment, he became and was owner in fee of it; and that by his conveyance to Fordyce, and Fordyce's reconveyance to him, he held a good title in fee to the land, and had the right of immediate possession ; that the decree of June 18, 1885, of the Circuit Court of Ritchie, vacating said tax-deed, as well as the affirmance of that decree by the Supreme Court of Appeals, were both set aside and reversed by the subsequent decree of the Supreme Court ; and that the defendants had no right or title to said land. And the bill prayed that the deed

from Davis to Williams, and that from Loomis, commissioner, to Davis, be held void and for naught, and the clouds cast by them upon his title be removed, and that he have a decree for the possession of the land.

The defendant Davis demurred to the bill, but his demurrer was overruled, and a decree pronounced granting the relief sought by the bill, annulling the deeds from Loomis, commissioner, to Davis, and from Davis to Williams. Davis and Williams appeal to this Court.

At the outset of our consideration of this case we are brought by the demurrer and the first assignment of error to the question of jurisdiction of equity to entertain the bill. The appellants challenge such jurisdiction, on the ground that the suit is in effect but a suit to try the legal title to land, for which there is plain and adequate remedy at law; while the appellee would sustain such jurisdiction on the principle that chancery will entertain suits to remove clouds from titles. In Pomeroy's Equity (section 177) it is stated :

"In all cases where the plaintiff holds, or claims to have, a purely legal estate in land, and simply seeks to have his title adjudicated upon, or to recover possession against an adverse claimant who also relies upon an alleged legal title, there being no equitable feature of fraud, mistake, or otherwise, calling for the application of equitable doctrines or the granting of peculiar equitable relief, the remedy at law is adequate, and the concurrent jurisdiction of equity does not exist. A suit in equity, under its concurrent jurisdiction, will not be maintained to take the place of the action of ejectment, and to try adverse titles and claims to land which are wholly legal, and to award the relief of a recovery of possession. While this general doctrine is well established, still, in addition to the particular cases of disputed boundaries, partition, and assignment of dower, over which the concurrent jurisdiction may extend, and in which a remedy strictly legal may be granted, a court of equity will also confer the final relief of possession, and will decree a defendant to deliver up possession of land to the owner when such relief is incidental to the main object of the suit, and the action is brought for some object otherwise within the equity jurisdiction."

Such has been the principle from the origin of equity jurisprudence found in all its books. The common law, from the earliest times, by means of writs of right and other real and possessory actions, has tried titles to lands and right to possession between adversary claimants, and has jealously claimed such power, and equity has conceded to it such jurisdiction; and it does at this day do so by means of the action of ejectment. The right of trial by jury has been regarded, next to trials involving life and liberty, as most essential and fitly applicable to controversies involving freeholds in lands, under that provision of *Magna Charta,* which is imbedded in American constitutional law, that no freeman shall be disseised of his freehold but by the lawful judgment of his peers or the law of the land; and the court of the common law is the appropriate home of the jury.

Now in this case the bill is particular to allege that the plaintiff has a purely legal title, and it represents of the defendant's claim nothing else than that he claims a legal title; and it thus seems to be a litigation between legal claims, within the spirit of the law as laid down by Pomeroy above quoted. So we view it. But recourse to equity is sought to be vindicated in this case by the plea that it has jurisdiction to dispel clouds from title by actual cancellation of the muniments on which the weaker claim rests. Mr. Pomeroy in his Equity Jurisprudence (sections 1398, 1399) thus states the doctrine:

"The jurisdiction of the courts of equity to remove clouds from title is well settled, the relief being granted on the principle *quia timet;* that is, that the deed or other instrument constituting the cloud may be used to injuriously or vexatiously embarrass or affect a plaintiff's title. Whether or not the jurisdiction will be exercised depends upon the fact that the estate or interest to be protected is equitable in its nature, or that the remedies at law are inadequate where the estate or interest is legal; a party being left to his legal remedy where his estate or interest is legal in its nature, and full and complete justice can thereby be done."

In note 4 to section 1399, Pomeroy, citing various authorities to his support, states that, when the estate or interest to be protected is equitable, the jurisdiction should be exer-

cised, whether, the plaintiff is in or out of possession, for then legal remedies are not possible; but that, when the estate or interest is legal in its nature, the exercise of the jurisdiction to remove clouds depends upon the adequacy of legal remedies. Thus, for example, a plaintiff out of possession, holding the legal title, will be left to his remedy by ejectment, under ordinary circumstances. For myself, I consider this a correct statement of the law.

The Virginia court of appeals, in Carroll v. Brown, 28 Gratt. 791, followed this doctrine, holding that equity has jurisdiction of a suit brought by the owner in possession to set aside a deed put upon record whereby the complainant's land has been wrongfully conveyed to a purchaser at a tax-sale; the opinion quoting and approving Cooley on Taxation, stating that, where the tax-purchaser is in possession, the owner must resort to law, or, where neither is in possession, he must resort to law.

As to tax-deeds this Court has sustained equity jurisdiction to cancel them, regardless of who held possession. Simpson v. Edmiston, 23 W. Va. 678, and cases cited.

In this case the bill does not state plainly as it should the jurisdictional fact that plaintiff is in possession. True, it does state that, upon his recovery in ejectment, plaintiff went into possession; but the bill, and an exhibit of a decree in the suit selling the land for purchase-money, show a sale, and the award of writ of possession to Davis, the purchaser at the judicial sale, whereby he may have obtained possession; and the bill alleges the plaintiff's right to immediate possession, and prays that he may have a decree for the possession of the land; and therefore we treat it as showing the defendant in possession, or, at least, as not showing plaintiff in possession.

An additional reason against equitable jurisdiction occurs to me, and it lies in the fact that the bill not only shows that there is adequate remedy at law, but that the plaintiff already had entered the law forum by an action of ejectment, and recovered judgment for the land, which, so far as the bill shows, remains in full force, and, as it alleges, confers upon him valid title. What is shown to deprive said judgment of its legal force? Does it not possess that

effect which the law accords to a judgment in ejectment? Its efficacy may be denied. So, if the decree in this cause should stand, the efficacy of it too might be denied; and would that call for still another resort to the equity court?

The case of *De Camp* v. *Carnahan*, 26 W. Va. 839, holding that equity has jurisdiction to cancel a deed which is a cloud upon the title of one out of possession of land, is cited; but I do not think that case can apply to this, because of the fact that here the plaintiff having adequate remedy at law did actually resort to it, and, when he brought this suit, had a judgment in ejectment, which was not the case in *De Camp* v. *Carnahan*, and besides the opinion sustains the jurisdiction there on the ground of partition, and, that being an acknowledged jurisdiction in equity, it would pass on the title incidentally to other relief.

The cases of *Grinnan* v. *Edwards*, 21 W. Va. 347; *Haymond* v. *Camden*, 22 W. Va. 180; and *Sturm* v. *Fleming*, Id. 404—which have been referred to as sustaining the jurisdiction claimed—were not cases to remove clouds, but cases where such relief was clearly proper on other grounds. *Grinnan* v. *Edwards* was a case where a party purchased land, and went within the Confederate lines, and while there suit was brought by the vendor within the Union lines to sell the land for unpaid purchase-money, and the land was sold. The vendee later sued his vendor, who had purchased at the sale under decree, and a party to whom he sold, asking specific performance and attacking such judicial sale. Here specific performance gave jurisdiction. The party could not sue at law. Holding the judicial sale void because the vendee was in the Confederate lines, when the sale was made, was simply incidental to the main relief. *Haymond* v. *Camden* was a case wherein, while a party was within the Confederate lines a suit within the Union lines was prosecuted against him, and decree rendered on publication against him as a non-resident; and afterwards he appeared and filed an answer, asking rehearing and reversal for certain errors; and the court, treating the answer as a petition for rehearing simply, reheard the case under the statute allowing rehearing to non-residents, and held the decree erroneous and void. *Sturm* v. *Fleming*, was a peti-

tion to rehear a case in which a decree had been rendered against a party within the Confederate lines on order of publication under which his lands were sold; and the court treated it as a bill in the nature of a bill of review, and reheard the decree, holding it not merely erroneous, but void. These two cases were simply cases of rehearing, not original suits. No one of these three cases asserts the right of equity to entertain an original bill by a person out of possession of land to cancel instruments because they beget clouds on title, when the contest is between legal titles, and there is no inadequacy of remedy at law.

It may be said that the fact that there is one decree of the Supreme Court of Appeals affirming a decree of the Circuit Court, which latter decree vacated the tax-deed, and the fact, that there is a later decree of the Supreme Court setting aside its first decree and reversing said decree of the Circuit Court, and dismissing the bill seeking to impeach the tax-deed, additionally complicate and becloud plaintiff's title; but the ready answer is that all questions arising from those decrees may be effectively passed on at law, just as well as in equity, and they do not change the nature of the controversy.

I would prefer to decide all questions presented in this case, but, as we decide the case only on the point of jurisdiction, I go no further than a decision on that point requires. A system of jurisprudence like ours, consisting of two departments—law, and equity—which often turns a suitor without relief out of the door of one, only to enter the door of the other, is highly defective in the opinion of many. It may be wise or unwise, but it is our heritage from our forefathers centuries back, and such is the house in which we now live. We can not disregard its apartments without disregarding the precedents of the past and tearing down the structure.

It appears from plaintiff's deposition that he was not, but Williams was, in possession of the land when this suit was brought; and thus it appears that the bill could not, if sent back, be amended so as to allege that plaintiff was in possession, if that fact, in view of the existence of the judgment in ejectment, could affect anything. Therefore we

reverse and sustain the demurrer, and dismiss the bill, only because of want of jurisdiction in equity, but without any prejudice to plaintiff's rights.

REVERSED.

---

# CHARLESTON.

