# CHARLESTON.

MOORE *v.* MCNUTT, COMMISSIONER, *et al.*

Submitted January 22, 1896—Decided March 21, 1896.

1. EQUITY JURISDICTION—CLOUD ON TITLE.
     Equity will exercise jurisdiction to remove a cloud resting upon title to real estate where complainant, though having legal title, is in actual possession. It will not exercise such jurisdiction where complainant has legal title, and is not in actual possession, no matter whether his adversary is in or out of actual possession.

2. EQUITY JURISDICTION—CLOUD ON TITLE.
     Equity will exercise jurisdiction in advance to prevent acts which will cast a cloud over title to real estate, on the same principles on which it removes clouds already resting on such title.

3. EQUITY PLEADING—MULTIFARIOUS BILL.
     A bill *held* multifarious.

4. EJECTMENT.
     *Quœre:* Can a person maintain ejectment, though he be in actual possession, against one who either exercises acts of ownership, or claims title to the land in controversy?

5. COMMISSIONERS OF SCHOOL LANDS — SALE OF FORFEITED LANDS.
     Chapter 95, Acts 1882, does not dismiss proceedings pending at

its date, brought under chapter 134, Acts 1872-73, by commissio n-
ers of school lands, to sell lands. Chapter 24, section 19, Acts 1893,
dismisses such proceedings brought since 12th March, 1891.

DAVID E. JOHNSTON and A. W. REYNOLDS for appellant,
cited 1 Wait. Act. &. Def. 662, 663, 664; 3 Id. 189, 190, 191
758; Pom. Eq. Jur. §§ 265, 269, 274, 1395, 1396, 1397, 1398;
1 Sto. Eq. Jur. §§ 694, 699, 700; Sto. Eq. Pl. §§ 284, 285,
285a; 1 High, Inj. 242; High, Inj. § 1308; 28 Am. Dec. 437,
441, notes; 28 Gratt. 791; 80 Va. 48; 3 How. 441; 26 W.
Va. 839; 49 Am. Dec. 146; 93 Am. Dec. 425; 110 U. S. 52;
46 Am. Dec. 216; 63 Am. Dec. 85; 49 Am. Dec. 139; 24 W.
Va. 561; 29 W. Va. 633; 19 W. Va. 257, 416; 5 Cal. 73; 2
Cal. 524, 558; 32 W. Va. Appendix; 15 W. Va. 208; Code,
c. 105, s. 19; Acts 1893, c. 24, ss. 19, 23.

BRANNON, JUDGE :

Johnston Moore filed a bill in equity in the Circuit
Court of Mercer county, setting up that he owned certain
lands derivatively from an old grant from the common-
wealth of Virginia, and that possession actual under it
had been held since its emanation, in 1795, and he was
still in such possession; that three certain junior grants for
three tracts had been issued, and no possession had ever
been taken under them, and those tracts lay wholly within
the boundaries of the plaintiff's land; that R. B. McNutt,
as commissioner of school lands for Mercer county, had in-
stituted a proceeding to sell the three tracts claimed under
said junior grants for the benefit of the school fund, as
lands sold for non-payment of taxes, and purchased in by
the state; that the owners claiming under the junior grants
had filed petitions in said proceeding of the school com-
missioner, praying to be allowed to redeem their land from
such delinquency and revest title under said junior grants
in them, as provided by statute; that the proceeding of the
school commissioner also sought the sale of a tract of land
as waste and unappropriated, but that it was not such, but
was included within the said older grant, and owned by
the plaintiff; that certain orders for the sale of the land
had been made in said proceeding of the said commission-
er; that the owners under said junior grants were combin-

ing with McNutt to restore to themselves the claim or title lost by tax delinquency; that the plaintiff's title to his land was older and superior to that claimed under the junior grants; that the existance of said junior grants, and the sale or redemption of the lands held under them, through the said proceeding of the school commissioner, constituted a cloud over the title of the plaintiff, giving his title danger and disquietude, rendering it doubtful and beclouded in public estimation, and thus impairing its salability and value, *etc.*

The bill prayed that the said hostile junior grants, and all documents passing the lands mentioned in them to their present claimants, and all orders in said proceeding of the commissioner of school lands, be cancelled and set aside as void, and held for naught, and that further steps in said proceeding for the sale of said land be enjoined, and that the claimants under said hostile junior grants be silenced in their claims under them, and be enjoined from further claiming the said land, or asserting title thereto. Upon demurrer the bill and amended bill were dismissed, and Moore appealed.

It is settled that chancery will, under circumstances, exercise jurisdiction to remove clouds over title to real estate, in order to quiet and perfect the superior title. *De Camp* v. *Carnahan*, 26 W. Va. 839; Pom. Eq. Jur. § 1395; Story, Eq. Jur. §§ 694, 699, 700; *Helden* v. *Hellen* (Md.) 45 Am. St. Rep. 371, and full note; s. c., 31 Atl. 506. But it will not do so in every case of adverse claim. It will not help one who has legal title, and is out of actual possession, against an adversary claimant in possession, because there is adequate remedy by ejectment. *Clayton* v. *Barr*, 34 W. Va. 290 (12 S. E. 704); *Carrington* v. *Otis*, 4 Gratt. 235, 252; *U. S.* v. *Wilson*, 118 U. S. 86 (6 Sup. Ct. 991); *Helden* v. *Hellen*, (Md.) 45 Am. St. Rep. note, page 375; s. c. 31 Atl. 506. *De Camp* v. *Carnahan*, 26 W. Va. 839, so far as it is *contra*, is not according to the great weight of authority; but the case was really one based on equity jurisdiction—for partition. See *Clayton* v. *Barr*, page 297; 34 W. Va., page 706 (12 S. E. 704).

As equity will not remove a cloud over title where there

88

is adequate remedy at law, the question is germane to this case, whether there is a remedy at law. Can Moore sustain ejectment? Being in possession, up to the Code of 1849, he could not; ejectment till then being not a real action, but purely possessory, the writ of right being at that date the action to try the mere title. But that Code abolished the writ of right, and ejectment was, in words, by sections 1, 2, chapter 135, continued as before, and also made applicable in the same cases in which a writ of right had before been used. It was given to any one havng a subsisting interest in the land, and a right to recover the same, or its possession. It provided, in section 5, "that the person actually occupying the premises shall be named defendant. If they be not occupied, the action must be against some person exercising acts of ownership thereon, or claiming title thereto, or some interest therein." Before that act the judgment in ejectment was not conclusive on either title or right to possession, and repeated actions might be brought; so that equity found it necessary to intervene by a decree to quiet title. But section 35 of that chapter made the judgment "conclusive as to the title or right of possession established in such action, upon the party against whom it is rendered and against all persons claiming from, through or under such party by title accruing after the commencement of the action." These changes and enlargements mean something. They made the action a real one—one to try, not merely present possession, but the right to that possession, as dependent on title; that is, the title itself. It has been so greatly changed from the old ejectment that one may call it a "statutory action of ejectment." This modern action is frequently called a "real action." Newell, Ej. 14. The revisors of the Code of 1849 said that the chapter was borrowed from New York, and that it was there used for the trial of conflicting titles, and that, in reporting it, they designed it to try the mere right, as well as the right of possession. Of the Virginia act, Justice Miller, in the United States supreme court, said that the act allowed the action to "be brought against persons claiming title, though not in possession"; that "the policy of the act was obvious: It is that

persons out of possession, who set up false claims to land, may, by suit in ejectment—which is the legal and proper mode of trying title—have that claim brought to a test. The act provides that such a judgment is conclusive against all the parties, and thus the object of the law, to quiet title by verdict and judgment in such cases, is rendered effectual." The court there allowed an action against claimants, though not in possession. *Harvey* v. *Tyler*, 2 Wall 328. In *Banyer* v. *Empie*, 5 Hill, 48, persons claiming title, though not in possession, were sued in ejectment. In *Stearns* v. *Harman*, 80 Va. 48, it was held that ejectment is the proper remedy where the owner has legal title, but not actual possession, and another asserts adverse claim, but is not in possession. See Hutch. Land Titles, p. 250. Judge Green so held in his opinion in *Beckwith* v. *Thompson*, 18 W. Va. 134. In fact, the Court so held by dispensing with proof that defendant was in possession at commencement of action. Point 6. Our Code (chapter 90, s. 5) is broader than the Virginia Code, saying that the occupant shall be defendant, "and whether they [the premises] be occupied or not, any person exercising acts of ownership thereon, or claiming title thereto, may be made defendant." Now, seeing that the action is one to try title, and that any one claiming title or exercising ownership may be defendant, why may not one in possession, disquieted by acts of trespass under a false claim of ownership, or by one who asserts title adverse to the occupant, and thus disquiets him and casts a cloud over his title, sue in ejectment? You allow the owner not in possession to sue such a claimant, as just shown by authorities cited, and why not one in actual possession? Why drive him into equity, and deprive him of a jury trial? Why deprive his adversary of a jury trial? This construction gives a jury trial to both parties in that case in which, in civil cases, it has been most highly esteemed; that is, where one is to be deprived of his freehold in lands.

But, whether a party in actual possession can sue an adverse claimant in ejectment or not, it has been very long settled that one in actual possession, with legal title, may sue his adverse claimant in equity, and thus overthrow his

enemy's right and clear his own, because, having posses-
sion, he could not sue at law.    *Carroll* v. *Brown*, 28 Gratt.
791; *Stearns* v. *Harman*, 80 Va. 48; Hutch. Land Titles, 250;
*Allen* v. *Hanks*, 136 U. S. 300, (10 Sup. Ct. 961); *U. S.* v. *Wilson*, 118 U. S. 86 (6 Sup. Ct. 991); *Helden* v. *Hellen* (Md.) 45
Am. St. Rep. 371, 375; s. c., 31 Atl 506.    So, when neither
party is in possession equity has no jurisdiction, as eject-
ment lies, but it has where the owner is in actual possession.
The plaintiff, being in possession, had right to go into
equity.    Even if he could maintain ejectment, that would
not debar him from chancery, because the jurisdiction in
such case in chancery, having been established long be-
fore the Code of 1849, which is the first time the right to
maintain ejectment by one in possession arose, the juris-
diction of chancery would not be ousted by the new act.

Equity will interfere in advance, by injunction, to pre-
vent a cloud from being cast on title, upon the same prin-
ciples on which it will remove a cloud from title.    *Tucker*
v. *Kenniston*, 93 Am. Dec. 425, and note; 1 High, Inj. § 372;
*Miller* v. *Cook* (Ill. Sup.) 10 Lawy. Rep. Ann., note, page
293; s. c., 25 N. E. 756.

But had the court jurisdiction to stop the commissioner
of school land from the prosecution of said proceeding?
The circuit court thought not, and gave that as one reason
for sustaining the demurrer, in its decree.    It can not be
that whenever a commissioner of school lands is prosecuting
a proceeding, in obedience to the command of statute, to
sell the lands of the state for the benefit of the school fund,
any person claiming another title to the land can step in
and, on merely the ground that he holds what he claims to
be a better title, enjoin the entire proceeding.    It is sub-
stantially the state's suit, though we may call the commis-
sioner a "ministerial officer."    He may not be purely such.
At any rate, we do not think an adversary claimant, mere-
ly as such, can stop the steps thus taken to dispose of state
lands.    Where would it end?    The sale does not affect him,
unless a party.    And under the present statute he is made,
or can become, a party, as the proceeding is a suit.    It is
suing the state, virtually.    She has not authorized such a
suit.    Though this proceeding was under the old law, be-

fore the legislature made the proceeding a suit *inter partes*, it was prosecuted afterwards; petitions were filed afterwards, especially that for the alleged waste land; notice was given to all claimants to come in as under the new law; and Moore did appear in the proceeding, and, though dismissed as a party, might appeal. If he could not, he could assert his title against any purchaser under the proceeding, or against the former owner, if there were a redemption. This decree expressly · reserved him this right. The suit was, as the decree says, premature—before there was a sale or redemption. We can not adopt a precedent making any and every suit by the commissioner of school lands, instituted for the direct benefit of the state, to raise revenue by the sale of its lands, subject to the embargo which any one may impose, on the allegation that he has an adverse claim to the land, which may be beclouded by the suit. This makes it no worse clouded than before. He can have his suit against private parties.

I think the bill is multifarious. It brings in three different tracts of land, with their different titles and different owners. What interest in common have they? Why involve the owner of one distinct tract with matters of evidence and law pertaining exclusively to another tract and its owner? Then it brings in a separate tract as ownerless, because waste and unappropriated. What have the owners of the three tracts to do with this waste tract? There is no bond in common, no unity or common interest, between these four tracts, save only that they are adverse to the plaintiff's claim; and that is no bond between them, giving them any affinity to one another. How many tracts and different owners can be brought into one suit, all having different facts? Where is to be the end of the complications and prolixity growing out of so many lawsuits in one proceeding? Now, each of these tracts has a separate defense against the plaintiff's tract—as wide apart it may be, as the poles, and, as between the plaintiff and their owners, distinct. But it is said the commissioner's proceeding is against all, and this justifies their union in one suit; but as there is no jurisdiction as to this commissioner, that ground of union falling out, the matters are

separate as to the parties against whom there is jurisdiction. And, besides, the commissioner had a separate proceeding against each tract.

It is argued that, as to the three tracts forfeited for delinquency, the proceeding of the commissioner of school lands was under chapter 134, Acts 1872-73, and that it was repealed by chapter 95, Acts 1882, and therefore the proceeding of said commissioner died, and the court had no longer any jurisdiction to entertain it. We are cited to *Curran v. Owens*, 15 W. Va. 208, in support of this proposition. That case held that where a statute made the sale of liquor to certain persons a cause of action for their wives and others, which, without the statute, would give no action, the repeal of the act without any saving clause would end a pending action. But that principle can not apply here. The acts of 1872-73 and 1882 were both, in terms, amendatory of chapter 105, Code 1868. This act of 1882 did not say that those lands which the act of 1872-73 required to be sold for the school fund should no longer be liable to sale—did not destroy the cause of action, as did the repealing act in the Curran Case; but, on the contrary, it expressly repealed the provisions of the act of 1872-73, declaring that those classes of lands should continue to be sold, and provided for a proceeding to sell them. It retained the officer called the "commissioner of school lands," and required him, as before, to ascertain and report them to the self-same court, and carry on certain proceedings to secure their sale. It simply modified or amplified that proceeding, converting the proceeding as it had existed under the act of 1872-73 from a non-judicial and administrative proceeding, not having formal parties, into a more efficient proceeding—one judicial in character, in that it required formal parties; made it a suit *inter partes*. Why does this mere amendment destroy pending proceedings to accomplish the same purpose contemplated in the modified remedy provided by the new statute? This latter act repeals all acts and parts of acts coming within its purview. This would be a repeal, if that were all, but it says all acts "inconsistent therewith." There is nothing in the continuance of pending proceedings inconsistent with the act. They

are consistent with it. It has been said that an act repealing, or in any wise modifying, the remedy of a party by action or suit, should not be construed to affect actions or suits brought before the repeal or modification. While this statement is probably too broad, it is nevertheless true that where the effect of the legislation is not to take away the jurisdiction or right previously existing, nor to deny a remedy for its enforcement substantially like the one previously allowed, but merely to change the remedy, the right and jurisdiction continue under the form directed by the new act, where it applies, or else under the old law. End. Interp. St. § 482. If advisable, the pending proceeding should be amended to conform to the new statute. Statutes are *prima facie* prospective in operation. Another principle of interpretation is applicable here: Repeals by implication are not favored. It must be clear repugnancy. When the repeal is expressed, as in this case, but is, in terms, only of inconsistent acts, the inconsistency must be clear. We must see plainly that the legislature must have intended the death of pending proceedings. We can not so see when we know it continued the same form of remedy, modified to accomplish the same end. Why destroy the pending remedy simply to institute another? Suth. St. Const. § 147. Where successive statutes give successive remedies the first is not destroyed, and the rule is against implied abolition of the first remedy. Suth. St. Const. § 202. The same principles apply to chapter 94, Acts 1891, and chapter 24, Acts 1893, except that section 19 of the last act dismissed suits brought since 12th March, 1891, thus retaining prior ones by strong implication. They amend and re-enact chapter 105 of the Code, and only repeal inconsistent acts. These acts are but a continuance of statute law providing for the sale of state lands, and though the mere form of remedy has been modified, it is wholly unreasonable to suppose—as the mandate to sell the lands by proceedings in the circuit court is persistent and unchanged—that the legislature, in its amendatory acts, intended to render lifeless prior suits yet pending. On the contrary, section 19 of the act of 1891 continued pending suits.

We affirm the decree of the Circuit Court.