# CHARLESTON.

SMITH *v.* O'KEEFE *et al.*

Submitted January 21, 1897—Decided March 24, 1897.

1. EQUITY JURISDICTION—*Quieting Title—Possession.*

   Where a party having the legal title to a tract of land is in possession of the same, he will be entertained in a court of equity in a suit instituted to remove a cloud from his title. (p. 179.)

2. EQUITY JURISDICTION—*Quieting Title—Possession.*

   Where a portion of such tract of land is included by mistake in a survey made under the direction of the commis-

sioner of school lands, and is sold under the statute for the benefit of the school fund, and a deed made to the purchaser thereof, equity will take jurisdiction of a suit brought by the owner of such tract of land, who is in possession of the same, for the purpose of canceling said deed and removing the same as a cloud upon his title. (p. 179.)

Appeal from Circuit Court, Logan county.

Bill by Jacob Smith against James O'Keeffe and another. Decree for defendants, and plaintiff appeals.

*Reversed.*

CAMPBELL & HOLT, for appellant.

ENGLISH, PRESIDENT:

This was a suit in equity brought in the Circuit Court of Logan county, W. Va., by Jacob Smith against James O'Keeffe and Samuel Walton. The plaintiff in his bill alleges: On the 22nd day of June in the year 1877, one George Hatfield was seised and possessed in fee of a certain tract of land situated in said county of Logan, on Mates creek, containing five hundred acres, more or less, and on that day said George Hatfield, together with C. Varney and Mary, his wife, and Larkin Varney and Nancy A., his wife, who held some equitable interest in a portion of said five hundred acres, conveyed the same to the plaintiff by their deed of that date, which was duly recorded in the clerk's office of the county court of said county on the 26th day of June, 1877, the consideration for said conveyance being eight hundred and sixty-five dollars in cash. That on the delivery of said deed the plaintiff took actual, visible possession of said land under and by virtue of said deed, and has ever since continued in the actual, visible, and adverse possession of the land as his own, and paid taxes thereon. That one portion of said land had been granted to the said George Hatfield by the commonwealth of Virginia by letters patent bearing date on the 2nd day of September, 1861, and another portion was granted Hatfield by a like patent dated on the same day and year, each grant containing three hundred and thirty-three acres (which patents were exhibited with the bill). Another portion of said land was granted by the commonwealth of Virginia to Herendon Murphy by letters

patent dated the 30th day of June, 1847, the original of which patent was also filed with the plaintiff's bill. That said Murphy conveyed the last named twenty-two acres to said George Hatfield, which deed was recorded in the clerk's office of Logan county court in a deed book, which during the late Civil War was almost totally destroyed, and the record of said last named deed is entirely gone. That some time in the year 1888 or 1889 one E. H. Simpkins, claiming to have authority from A. W. Buskirk surveyor of lands in Logan county, entered upon a portion of said land, and made a survey purporting to be for the state of West Virginia, and described it as one hundred and fifty acres of school land. A portion of it interlocks with plaintiff's land.

The bill further alleges that L. D. Chambers, commissioner of school lands of said county of Logan, instituted some sort of proceedings against said tract of one hundred and fifty acres in the circuit court of said county, and asked the same to be sold for the benefit of the school fund; and on the 20th day of October, 1888, said Chambers, as such commissioner, made a deed to one William Stratton, purporting to convey said one hundred and fifty acres to him, which deed was duly recorded in the clerk's office aforesaid, and is signed and sealed by said Chambers as an individual, and not in his official capacity as school commissioner (a copy of which deed was exhibited); that on the 6th day of March, 1889, William Stratton and wife made a deed to James O'Keefe purporting to convey to him the said one hundred and fifty acres (which deed was duly recorded, and a copy thereof exhibited), and the said O'Keefe and wife on the 5th day of March, 1889, made a deed to Samuel Walton purporting to convey to him, *inter alia*, a three-fourths undivided interest in said tract of one hundred and fifty acres. And said bill further alleges: That neither at the time of said survey by Simpkins, nor at any time before or since, was any part of the land in the boundaries of the Hatfield deed liable to be sold for the benefit of the school fund, either as waste and unappropriated lands, or delinquent and forfeited lands; to which proceedings on the part of the school commissioners seeking the sale of the said land, plaintiff was not a party, and of which he had no notice, and they therefore are null

and void. And the paper writing purporting to be a deed, and purporting to convey said one hundred and fifty acres to William Stratton, was absolutely null and void, as well as the deed of William Stratton to James O'Keefe and Samuel Walton. That said deeds are a cloud upon the plaintiff's title, and, being in possession of said land, he is not in a position to prosecute an action of ejectment or other suit at law, and that his remedy therefore can be obtained in a court of equity; and he prays that said deeds may be declared null and void so far as they purport to convey any portion of the plaintiff's land aforesaid, and that they be removed as clouds upon his title. The defendants, James O'Keefe and Samuel Walton, demurred to the plaintiff's bill, and the plaintiff joined therein, upon consideration whereof the same was overruled; and thereupon the said James O'Keefe and Samuel Walton tendered their joint answer to the plaintiff's bill, which was ordered to be filed, and the plaintiff replied generally thereto. Said defendants in their answer put in issue the material allegations of the plaintiff's bill. Depositions were taken and filed in the cause by the plaintiff, and on the 4th day of May, 1895, the cause was finally heard, and the bill was dismissed at the costs of the plaintiff, without prejudice to any suit that the plaintiff might thereafter be advised to bring; and from this decree the plaintiff applied for and obtained this appeal.

It is assigned as error that the court below erred in dismissing the plaintiff's bill, because the plaintiff had shown himself clearly entitled to the relief sought, being seised of the land by an indefeasible title, and being in the actual possession thereof; and the defendants' claim being invalid and void, but constituting a cloud, the plaintiff was entitled to have the same removed. The question presented for our consideration in this record is whether a person claiming the legal title to land, being in possession thereof, can maintain a suit in equity to remove a cloud from his title. This question is not a new one in this state, but has been considered by this Court in several cases. In the case of *Clayton* v. *Barr*, 34 W. Va. 290, (12 S. E. 704), this Court held that "where the estate or title between conflicting claimants to land is legal in nature, and legal remedy is adequate, and one party has already recovered

in ejectment upon his claim, that party cannot sue in equity to remove the cloud from his title arising from such adverse claim; the party suing being out of possession, and the adverse claimant in possession." The case we are considering differs from that in several respects: First, the plaintiff is in possession of the land; second, the defendants are not in possession; third, no action of ejectment has been brought, or could be brought, by the plaintiff, who is in possession. In that case, BRANNON, JUDGE, cites Pom. Eq. Jur. §§ 1398, 1399, where the law is thus stated: "The jurisdiction of the courts of equity to remove clouds from title is well settled, the relief being granted on the principle, *quia timet;* that is, that the deed or other instrument constituting the cloud may be used to injuriously or vexatiously embarrass or affect a plaintiff's title. Whether or not the jurisdiction will be exercised depends upon the fact that the estate or interest to be protected is equitable in its nature, or that the remedies at law are inadequate where the estate or interest is legal; a party being left to his legal remedy where his estate or interest is legal in its nature, and full and complete justice can thereby be done." In the case of *Simpson* v. *Edmiston*, 23 W. Va. 675, a suit in equity was sustained in which the plaintiff sought to set aside a tax deed, as a cloud upon his title, although the plaintiff was in possession. So, also, in the case of *De Camp* v. *Carnahan*, 26 W. Va. 839, this Court held that a court of equity has a right to cancel a deed which is a cloud upon the title of one out of possession.

In that case, JOHNSON, PRESIDENT, delivering the opinion of the Court, said: "It seems to me that in a case like the one at bar the remedy is not so full, adequate, and complete at law as in equity. The parties will be obliged to rest, if the court holds that the deed sought to be removed as a cloud on the title is invalid and cancels it; and if the court refuses to cancel, because the deed is good and valid, they must also rest, for in either case the question is settled. That is a question which a jury cannot be permitted to pass upon in ejectment. But the question of jurisdiction is at rest in West Virginia. We have repeatedly taken jurisdiction of such cases,"—citing *Grinnan* v. *Edwards*, 21 W. Va. 347; *Haymond* v. *Camden*, 22 W. Va.

180; *Sturm* v. *Fleming*, *Id.* 404. This question was also before the court of Appeals of Virginia in the case of *Carroll* v. *Brown*, 28 Grat. 791, where it was held that "a court of equity has jurisdiction in a suit brought by the owner in possession to set aside a deed which has been put upon record, whereby the complainant's land has been wrongfully conveyed to a purchaser at a tax sale." The facts in this case are very similar to the one under consideration. True, this Virginia case was a tax sale, and the one we are considering was a sale by the commissioner of school lands; but in both cases one hundred and fifty acres were surveyed, by mistake, off of the plaintiff's land, and a deed was made to the purchaser. Burks, J., in delivering the opinion of the court, says: "It is not to be doubted that this is a serious injury to the complainant's rights, and a grievance that calls for redress. What redress is he entitled to, and how and where is he to get it? His remedy, says the circuit judge in his decree, 'is at law, not in a court of equity.' What remedy has he at law? He is in possession of the property, and cannot bring ejectment against the claimant to try the title, and the claimant is content to stand off for the present and not bring an action against him. * * * The mischief springs from the defendant's recorded deed. As long as that stands, the injury must continue. It is a cloud that overshadows the complainant's title, and materially impairs, if it does not wholly destroy, its market value. If the defendant will not release, a cancellation of the deed by judicial authority furnishes the only adequate relief. A court of law can not give this relief, but a court of equity can and should give it." In the case of *Clouston* v. *Shearer*, 99 Mass. 209, it was held that "a person in possession of land, and taking the rents and profits, may, notwithstanding the General Statutes (chapter 134, §§ 49, 50), maintain a bill in equity to quiet his title against one who, as to him, is dispossessed and disseised, but asserts an adverse title under a mortgage the validity of which is denied by the plaintiff." Now, the evidence in the case we are considering clearly shows that the plaintiff had title from the commonwealth, regularly transmitted to him, and that he was in uninterrupted possession of the land, except that some one had built a house on the upper

end of the land (it does not, however, appear that it was a dwelling house, or that it was occupied by any one); that plaintiff's possession has continued since the date of his deed, June 22, 1877, and that he has paid taxes thereon since that time, and that there is an interlock of one hundred and fifty acres between the plaintiff's land and the land surveyed by E. H. Simpkins and sold by L. D. Chambers, commissioner of school lands of Logan county, to William Stratton, and by said William Stratton to James O'Keefe, part of which was subsequently conveyed by James O'Keefe and wife to defendant Samuel Walton; and that plaintiff has paid the taxes on said land since it was conveyed to him in 1877.

Reverting to the question of jurisdiction, we find that Judge Story says in his Equity Jurisprudence (volume 2, § 694), speaking of "Delivery Up, Cancellation, or Rescission of Agreements, Securities, Deeds, or Other Instruments. It is obvious that the jurisdiction exercised in cases of this sort is founded upon the administration of a protective or preventive justice. The party is relieved upon the principle, as it is technically called, 'quia timet'; that is, for fear that such agreements, securities, deeds, or other instruments may be vexatiously or injuriously used against him when the evidence to impeach them may be lost, or that they may throw a cloud or suspicion over his title or interest." Again the same author says (section 700): "But, whatever may have been the doubts or difficulties formerly entertained upon this subject, they seem by the more modern decisions to be fairly put at rest, and the jurisdiction is now maintained in the fullest extent. And these decisions are founded on the true principles of equity jurisprudence, which is not merely remedial, but is also preventive of injustice. If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can only retain it for some sinister purpose. * * * If it is a deed purporting to convey lands or other hereditaments, its existence in an uncanceled state necessarily has a tendency to throw a cloud over the title." And in the note it is said: "To remove a cloud upon plaintiff's title to land, the plaintiff must, under the common statutes, when suing upon a legal title,

show that he is in possession, or that the land is vacant; for it is said, if the defendant or another is in possession, the plaintiff has a remedy at law, by ejectment or by writ of entry,"—citing numerous authorities.

Cooley, in his valuable work on Taxation (page 544), under the head of "Quieting Title After a Sale," states the law upon this question as follows: "If land has been actually sold and conveyed for a tax, the original owner remaining in possession may have the validity of the sale tested by a bill in equity filed for the purpose of quieting his title. This is the general rule. Courts of law cannot give him relief in such a case, as he cannot bring eject-ment, being himself in possession, and no other form of action is given by the common law for such a case." And again this Court, in the case of *Moore* v. *McNutt*, 41 W. Va. 695 (24 S. E. 682), held that equity will exercise jurisdiction to remove a cloud resting upon title to real estate where complainant, though having legal title, is in actual possession. It will not exercise such jurisdiction where complainant has legal, and is not in actual posses-sion, no matter whether his adversary is in or out of actual possession.

The law upon this question seems to be so well and definitely settled that my conclusion is that the court erred in dismissing the plaintiff's bill. Applying the law as above quoted to the facts established by the testimony, the decree complained of must be reversed; and, this Court proceeding to enter such decree as should have been ren-dered by the court below, the deeds of the defendants are canceled and removed as a cloud upon plaintiff's title, with costs to plaintiff.

*Reversed.*