81 U.S. 279
 20 L.Ed. 890
 14 Wall. 279
 EASLEY
v.
KELLOM ET AL.
 December Term, 1871
 
 APPEAL from the Circuit Court for the District of Nebraska; the case being thus:
 On the 25th of June, 1857, Harrison Johnson having, as he supposed, the west half of a pre-emption right of 160 acres within the limits of the city of Omaha, gave a mortgage or deed of trust on it to secure the payment of his note to Easley and Willingham. Some time afterwards, the city of Omaha filed a caveat against Johnson's claim, and on the 29th of December, 1859, the commissioner of the land office gave notice to the local register and receiver that Johnson's certificate of location had been cancelled. Thereupon the property was advertised for sale as a part of the public lands. Johnson being in debt to several other persons, including one Kellom, it was proposed between him and some of these creditors that the property should be bid off at as low a price as possible, so that the creditors might receive satisfaction for their claims, and that something might be left for him. An agreement was drawn up and signed by Johnson and several of his creditors; but Easley and Willingham and one or two others refused to come into it. They insisted on their priority of lien. The sale took place in August, 1860. In pursuance of the agreement Johnson bid off the southern half of the 160 acres at the minimum government price in the name of his mother, and Kellom, on behalf of the creditors, bid off the northern half; each part containing forty acres of the land mortgaged. Kellom executed conveyances to the other creditors who, with himself, had signed the agreement, so as to divide between them the eighty acres purchased by him, in proportion to their claims against Johnson; and these creditors gave Johnson acquittances in full. Johnson's mother was in possession of her portion ever since the sale, he living on a part of it.
 In 1866 Easley and Willingham filed their bill against Kellom, Johnson, his mother, and several creditors, to foreclose their mortgage. They charged, first, that the cancellation of Johnson's pre-emption right was procured by his complicity and acquiescence, for the purpose of defrauding them out of their mortgage debt, and paying the other creditors; and, secondly, that when the public sale took place, it was agreed between Johnson and the other creditors who participated in the purchase, that Johnson was to have an interest in the purchase proportionate to the claims of those creditors who did not sign the agreement, so that he might afterwards make settlements with them. All the answers denied these charges; that of the mother alleged further that she was a bon a fide purchaser of the eighty acres purchased by her; and those of the other defendants alleged that Kellom was a similar purchaser of the eighty acres purchased by him. They further insisted that the complainants' mortgage, or trust deed, being made by Johnson before he obtained a patent for the land, was void by the 12th and 13th sections of the pre-emption act of September 4th, 1841.*
 Upon these pleadings the parties went into proofs. No evidence, however, was adduced to show that the cancellation of Johnson's pre-emption certificate was improperly obtained, and the case was therefore to be considered upon the hypothesis that he had no valid claim, and that the land belonged to the government, and was properly sold as such in 1860.
 But on the question with regard to the agreement made between Johnson and his creditors, the preponderance of the evidence seemed to establish the allegations of the bill. Neither the original agreement between Johnson and the creditors, though it had confessedly been in writing, nor any copy of it, could be found; and the parol evidence, taken after the lapse of seven years (notwithstanding the stout assertions of Kellom and the creditors associated with him to the contrary), went to show that Johnson had reserved an interest in such portion of the land as would have belonged to the creditors that failed to come into the agreement. Johnson himself testified this. The consequence was, that a decree was entered for the complainants, against Kellom and those who received portions of his purchase, for one undivided half of the property in their possession covered by the mortgage. The decree did not touch the mother's half.
 After the decree was entered a copy of the agreement was accidentally discovered, and by it, it appeared that no provision had been made for the benefit of any creditors but those who signed it. The position which the defendants had taken in the case, and which, on the hearing, had appeared to be a false one, was thus shown to have been well founded. A bill of review was thereupon filed by the defendants, and the Circuit Court pronounced a decree in their favor, reversing the former decree. From this decree an appeal was taken to this court.
 Mr. J. Hughes (a brief of Mr. Woolworth being filed), for the plaintiff in error; Mr. Lyman Trumbull, contra.
 Mr. Justice BRADLEY (having stated the case) delivered the opinion of the court.
 
 
 1
 It seems difficult to find any ground for sustaining this appeal. Conceding that the deed of trust held by the complainants would have been valid as against Johnson and his assigns, had his pre-emption right been sustained; still, this right was not sustained. He had nothing that he could mortgage or convey. The subsequent sale by the government agents conveyed a good title to the purchasers, clear of the mortgage. The other ground on which the appellants relied, namely, that at the public sale Johnson had made some reservations in his own favor, in his agreement with the other creditors, for the purpose of enabling him to settle with the appellants, is taken away by the discovery of a copy of that agreement. It contains no such provision whatever. On the contrary it is a mutual agreement made for the sole benefit of those who executed it.
 
 
 2
 No question arises here, in reference to the eighty acres purchased by Johnson's mother. The original decree did not embrace any portion of that, and no appeal from that decree was taken by the complainants.
 
 
 3
 Some observations were made in reference to the provision of the agreement, looking to a combination to prevent competition in bidding at the government sale; but that objection, if valid, could only be taken by the government itself.
 
 
 4
 To conclude, the copy of the agreement which was discovered, and which laid the foundation for the bill of review, is sufficiently proved; and its absence at the former trial is satisfactorily accounted for.
 
 
 5
 DECREE AFFIRMED.
 
 
 
 *
 The case of Myers v. Croft, 13 Wallace, 291, had not been decided when this last point of the defence was made.—REP.