### DEDERICK v. FOX.

(Circuit Court, W. D. Pennsylvania. February 7, 1893.)

1. PATENTS FOR INVENTIONS—ABANDONMENT—APPLICATIONS.
Where, after certain claims of an application for a patent have been allowed, the applicant files a second application as a division of the original, and incorporates therein the allowed claims thereof, expressly abandoning the original application, but not the invention, the whole proceeding is a continuous one, from the date of the original application, and the patent allowed on the second application is not void on the ground of abandonment.

2. SAME—HAY-BALING PRESSES.
Letters patent No. 382,144, issued May 1, 1888, to Peter K. Dederick, for an improvement in hay-baling presses, are not void because of any abandonment arising from the proceedings in the patent office.

3. SAME—INTERFERENCE OF PATENTS.
The question of interference between patents is determined by the claims, and not by the general appearance and functions of the machine, shown but not claimed.

4. SAME.
There is no interference, within the meaning of Rev. St. § 4918, between patent No. 382,144, issued May 1, 1888, to Peter K. Dederick, and patent No. 365,211, issued June 21, 1887, to Andrew Wickey, both for improvements in hay-baling presses.

5. SAME—EQUITY JURISDICTION—REMEDY AT LAW—WAIVER.
On a bill in equity for infringement of a patent, an objection that there is an adequate remedy at law comes too late at the final hearing, and after testimony has been taken on the merits.

In Equity. Bill for infringement of a patent. Decree for complainant.

Church & Church, for complainant.
Lysander Hill, for defendant.

Before ACHESON, Circuit Judge, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge. Peter K. Dederick files a bill against William Fox for alleged infringement of letters patent No. 382,144, for improvements in hay-baling presses, applied for September 14, 1883, and issued May 1, 1888. To this bill, Fox answers, denying infringement; alleging the patent was invalid and void because complainant had abandoned the alleged invention to the public; that it had been in public use, and on sale, for more than two years before the application; that it was embodied in letters patent to Andrew Wickey, No. 365,211, applied for February 6, 1886, and issued June 21, 1887. He alleged fraud in obtaining the patent, and, finally, that in the then state of the art it was not a patentable invention, but a mere mechanical device. By replication filed, issue was joined, and proofs taken. The alleged infringing machine is of the form of structure shown in the Wickey patent, and is conceded to infringe the Dederick patent, if the latter be valid, and dates to the filing of the original application. The questions raised and discussed by counsel at the hearing may be grouped under three heads: First. Is the Dederick patent valid? Secondly. If so, are the Wickey and it "interfering patents," within the meaning of Rev. St. § 4918; and, if so, must the course therein provided be followed, and the question of interference determined before the present suit will lie against a mere user? Thirdly. Upon the facts shown, is the relief asked for the subject of equitable jurisdiction?

The principal question under the first head is as to abandonment, and the facts from which it is claimed to arise are these:

The application of Dederick, filed September 14, 1883, set forth:

"The sides of the chamber of the press are constructed open part of the way, as shown at H, to facilitate binding the bales, and the projecting ends of the chamber sides at both of the openings, H, are slotted in order to admit of passing bands at the right before the tying partitions reach the openings, if desired, and at the left to admit of the bands passing out with the bale. * * * It should be observed that in letters patent No. 152,084, June 16, 1874, I have shown open sides; but in the present application the openings do not extend to the top and bottom of the chamber, but only to the top and bottom slots, and leaving flanges, O, projecting into the openings, H, to form corners for friction at the top and bottom, and the section of side, G, is adjustable and secured or clamped at but one point, or at the center, or nearly so, so that when adjusted to produce friction it will conform to the bale, and produce bearing friction with its entire inner surface more uniformly than could be if adjusted at two or more places, as shown in the previous application referred to. I preferably use a band, I, to clamp the frame, which is formed, as shown, with nuts to screw up in a strong case bearing at each side of the press, and so that adjusting the same produces friction, as required, at top, bottom, and sides at the same time, although any form of band will answer the purpose, or bolts across the frame, by the ways, to clamp the bale and produce friction, will suffice. * * * Having thus fully described my invention, what I claim is: * * * (2) The combination of the bale chamber, F, with the adjustable sides, G. (3) The combination of the openings, H, with the adjustable sides, G. (4) The combination of the adjustable sides, G, with the clamp, I, as set forth. (5) The combination of openings, H, and flanges, O, and timber, K. (6) The combination of openings, H, and flanges, O, with a bale chamber provided with closed sides at the discharge end, as at G."

Without describing in detail the improvement Dederick made, its importance, or the difference between it and his preceding de-

vice, suffice it to say that the preceding application, when read in full, draws the distinction between them, and points to his improvements, viz. the openings in the bale chambers, the guiding strips, and self conforming and adjustable closed sides of the bale chamber, clamped or pivoted at a single point. Had these original claims been allowed, the present machine, made in conformity with the Wickey patent, would clearly infringe. On the 19th of October, 1883, the application was acted on, and claims rejected. On the 27th of July, 1885, (within the two years provided by Rev. St. § 4894,) the application was amended by a new specification containing, inter alia, the 2d, 3d, 4th, and 6th claims, as above. It was again rejected on July 29, 1885. Thereafter followed a long course of further amendments, rejections, appeals, interferences ordered and dissolved, substitution of drawings, etc., until the application was finally allowed, June 25, 1887. On August 15, 1887, applicant asked permission to add two claims to his allowed case, viz.:

"In a baling press, the combination, with a bale chamber having openings, as at H, of the sides, G, each clamped at but a single point, whereby they may automatically adjust themselves to the column of pressed material, substantially as described."

And:

In a baling press, the combination, in a bale chamber having openings, as at H, of the sides, G, each clamped at but a single point, for the purpose specified, and provided with passages for the bands on the bales, substantially as described.

In the petition accompanying them it was stated:

"These additional claims are presented at the request of the applicant, who makes the point that the claims at present allowed are not sufficient to cover fully the most important feature of his invention, to wit, the automatically adjustable sides, G, as applied to a press of this kind. The fifth allowed claim contains, as an unnecessary limitation, the words, 'supported at or near central points,' and it is feared that, should an infringer locate the support a great deal nearer one edge than the center, he would evade the claim, but still employ the substance of the invention."

This request was refused because it would require a new examination. So, on November 10, 1887, Dederick filed a new application, containing the two claims as above, as "a division" of his then allowed application. He then asked the case to be withdrawn from issue and suspended; that the examiner be required to pass on the patentability of these claims; and, if found patentable, that he be allowed to insert them in the allowed case, and to formally abandon the divisional case. This petition was refused, for the reason: "It would not be in accordance with good practice, or orderly proceedings governing such cases, to grant the same,"—and it was suggested "that the applicant has his remedy in the premises, should he incorporate in his application last filed the claims which are embraced in his allowed case, and also by formally abandoning the same." This suggestion, made by the committee on division, and approved by the commissioner of patents, was followed; and on December 23, 1887, Dederick filed a paper, in which he says:

"I hereby make formal abandonment of said application, but not of the invention therein contained, in favor of my other pending application, serial No.

254,854. filed November 8, 1887, which said last-mentioned application I desire to stand as a substitute for my said application, serial No. 106,470."

The same day he amended his second application by embodying therein all claims allowed on his original one. As thus amended, his second or division application was allowed April 3, 1888, in the form of the patent in suit.

How these facts evidence abandonment, we cannot see. Far from being a giving up, it was a most persistent pursuit, a continuous demand, for the claims first asked for. The substantial elements of the invention were set forth in the original application; claims broad enough to cover the features of invention embraced in the two claims afterward made as noted above. To our mind, these do not exceed the scope of the original claims, but were made in the exercise of a due caution on the applicant's part to forestall anticipated evasion. In view of the disclosure and explanation of invention made in the original application, their allowance was proper. We are of opinion the entire course of procedure was, in effect, a continuous one, from the filing of the first application until final allowance, and that there was no abandonment by Dederick.

His patent, then, being valid, prior in date to the Wickey one, and infringed by the machine in question, are the two patents interfering ones, under Rev. St. § 4918? If so, is the course provided therein mandatory, and a condition precedent to a suit against a mere user? There is a grave doubt whether these questions are properly before us. In his answer, defendant, as we have seen, set up a number of defenses; but it was not until final hearing the question of jurisdiction was first raised. Upon the general question of infringement this court has jurisdiction, and under the pleadings in this case, after issue joined, and testimony taken on the issues, which the defendant chose to raise, this objection, now for the first time heard, ought not to prevail. The case of Reynes v. Dumont, 130 U. S. 379, 9 Sup. Ct. Rep. 486, followed by Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. Rep. 340, would justify us in declining to consider this question. Assuming, however, it is properly before us, are these interfering patents? Interference and infringement are essentially distinct.

"It has become well-settled law that two patents interfere, within the meaning of this section, [4918,] only when they claim, in whole or in part, the same invention." Manufacturing Co. *v.* Craig, 58 O. G. 1093, 49 Fed. Rep. 370, and cases cited.

Applying this principle, do the 1st, 2d, and 5th Wickey claims "interfere" with the 1st, 2d, 3d, 4th, 5th, and 6th Dederick claims, as contended by defendant's counsel?

The Wickey claims are:

"(1) In combination with the baling trunk or chamber having a contractile delivery end, a flexible encircling hoop, and means for tightening said hoop to effect the contraction of said end. (2) In combination with the top and bottom walls. d, e, of the trunk, movable to and from each other, the side boards, D, their supporting bars, E, the encircling hoop, G, and expansion devices, substantially as described, whereby the hoop is caused to force the parts inward, and thus contract the delivery end of the trunk. * * * (5)

In a press of the type herein described, the side boards, D, for applying the final pressure to the bale, extended beyond their supports toward the receiving end of the press a greater distance than they are extended toward the delivery end."

And the Dederick claims are:

"(1) In a baling press, the combination with the bale chamber having openings, as at H, of the sides, each pivotally supported at a point between its extremities, whereby said sides are permitted to conform to, and bear with uniform friction upon, the column of pressed material, substantially as described. (2) In a baling press, the combination with the bale chamber having openings, as at H, of the sides provided with passages for the bands on the bales, and each pivotally supported at a point between its extremities, substantially as described, for the purpose specified. (3) The bale chamber having the openings, H, and guides, O, and provided with the closed sides at the discharge end, substantially as described. (4) The bale chamber having the openings, H, and guides, O, in combination with the adjustable closed sides at the discharge end, and means for adjusting said sides, substantially as described. (5) The bale chamber having the openings, H, the guides, O, and the slotted closed sides at its discharge end, substantially as described. (6) The bale chamber having the openings, H, the guides, O, and the adjustable slotted closed sides at its discharge end, substantially as described. * * *"

The question of interference is determined by the claims, not by the general appearance and functions of the machine, shown but not claimed. The elements of Wickey's first claim are—First, an encircling hoop; and, secondly, devices for tightening the hoop,— neither of which appears in any of Dederick's claims. The second claim is still more limited, for it includes, besides the two named, a number of others, and what is said of the first applies the more to it. The fifth claim is for a specific form of construction. It is not for the same invention Dederick made, but is subordinate thereto. The patents, then, not being interfering ones, within the purview of Revised Statutes, § 4918, the case of Paper Co. v. Knopp, 54 O. G. 391, 44 Fed. Rep. 609, is not applicable. We therefore are not called upon to discuss it.

We are asked, however, to dismiss this bill because the plaintiff's remedy is at law. However potent this reason might have been if raised in limine, as was done in Smith v. Sands, 24 Fed. Rep. 470, yet, in view of the fact that it was not raised until final hearing, and the answer tendered a number of issues upon which much testimony has been taken, we do not think it should now prevail, and in support of that position we refer to Reynes v. Dumont and Tyler v. Savage, supra. Let a decree be drawn accordingly.

ACHESON, Circuit Judge, concurs.